**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 98-30893

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

VERSUS

JOSHUA LEE FRANCIS,

Defendant - Appellee.

Appeal from the United States District Court
for the Western District of Louisiana
August 2, 1999

Before GARWOOD, DUHÉ, and BENAVIDES, Circuit Judges.

DUHÉ, Circuit Judge:

**BACKGROUND**

In May 1997, Joshua Francis ("Defendant") pled guilty to a state cocaine felony. The Louisiana court sentenced the Defendant to two years in the parish jail with no objection to home incarceration with electronic monitoring. The Defendant signed a contract with Louisiana Home Detention Services, Inc. ("LHD"), a private company designated by the State of Louisiana to monitor individuals placed in home incarceration. The contract contained several categories of prohibited activities and required the Defendant to submit to a search of his home "when LHD has probable

cause to believe that [he was] storing illegal contraband in his home." The contract further provided that the Defendant would be re-incarcerated for failing to submit to such searches.

During the Defendant's home detention, Officer Judice stopped the Defendant for a traffic violation in an area known for drug trafficking. Officer Judice performed a pat-down search and discovered that the Defendant had $1,000 in cash and was wearing an ankle bracelet. A drug dog sniffed the car's exterior but did not alert sufficiently to establish probable cause to search the vehicle. Later that day, Lafayette Crime Stoppers received an anonymous tip advising that a "black male named Josh, under house arrest at this time, lives at 407 Scottsdale in Ille des Canne . . . is trying to hide approximately nine cookies of crack cocaine." After learning of the tip, Officer Judice inquired about LHD's rights to search the Defendant's home.

Gobb Williams ("Williams"), LHD's director, also suspected that the Defendant was dealing drugs and advised the police that LHD had probable cause to search the Defendant's home. Williams' suspicion was premised on the following information: (1) three anonymous phone calls advising Williams that the Defendant was dealing drugs; (2) the Defendant recently tested positive for drug use; (3) Williams' belief that one of the Defendant's co-workers was dealing drugs; (4) the Lafayette Crime Stoppers tip; and (5) various "bits and pieces" of information about the Defendant's activities.

2

LHD requested police assistance and a drug dog to conduct the search. Upon arriving at the Defendant's apartment, Roland Sparrow, an LHD employee, advised the Defendant that he was there to check the monitoring equipment, that LHD would search pursuant to its contract with the Defendant, and that the police would assist in the search. Later, the police arrived, read the Defendant his <u>Miranda</u> rights, and asked for consent to search. The Defendant informed the police that the apartment belonged to his girlfriend, Telicha Hills ("Hills"), and that they would need her consent. When Hills initially refused to consent, Officer Langley informed her that police would search whether she consented or not. The Defendant eventually signed the consent to search and Hills signed as a witness.

The search yielded a .45 caliber firearm, $1060 in cash, marijuana, and "crack" cocaine. The Government charged the Defendant under federal law with possession of a firearm by a convicted felon. The Defendant moved to suppress the evidence, arguing that the search violated the Fourth Amendment. The magistrate judge recommended suppression because (1) the "special needs" exception to the Fourth Amendment warrant and probable cause requirements did not apply, (2) there was not probable cause for the search, and (3) the Defendant did not voluntarily consent to the search. The Government appealed to the district court. The Government argued that there was probable cause to search and the Defendant voluntarily consented to the search. Adopting the

magistrate's findings and recommendations, the district court suppressed the evidence. The Government appeals, arguing: (1) LHD had probable cause to search the Defendant's apartment; (2) the Defendant's contract with LHD obviated the need for a search warrant, and (3) even if the search was unlawful, the good faith exception to the exclusionary rule applies.

## DISCUSSION

For the purposes of this appeal, we assume without deciding that the Government had probable cause to search the Defendant's home. The remaining issues are whether the Defendant's contract with LHD obviated the need for a search warrant and, if not, the district court committed plain error in failing to apply the good faith exception to the exclusionary rule. For the following reasons, we hold that the contract did not obviate the need for a search warrant and that there was no plain error in failing to apply the good faith exception. Our holding is limited to the facts in this case and the issues raised by the parties in this appeal.[1]

## I.    The Defendant's Contract with LHD

Under Louisiana law, the sentencing court must "specify the

---

[1]The Government chose not to pursue two other avenues of appeal: (1) the Defendant's consent to the search and (2) the special needs exception to the warrant requirement. As to the latter, see United States v. Scott, 678 F.2d 32, 34-35 (5th Cir. 1982); United States v. Hill, 967 F.2d 902, 908-910 (3rd Cir. 1992); State v. Patrick, 381 So.2d 501, 503 (La. 1980).

conditions of home incarceration when it imposes such sentence upon the defendant." La. Code Crim. Proc. Ann. art. 894.2 (West 1999).[2] In this case, the court did not impose a search condition. Therefore, the search condition in the contract was illegal and a nullity under Louisiana law. Because there are no Louisiana cases directly on point, we look to probation cases in reaching our conclusion. Article 895 lists certain probation conditions that "shall" be imposed by the court and others that "may" be imposed by the court. See La. Code Crim. Proc. Ann. art. 895 (West 1999). Louisiana cases prohibit sentencing courts from delegating their authority to impose conditions of probation. See State v. Hardy, 432 So.2d 865, 866 (La. 1983) (vacating a condition of probation that ordered the amount of restitution to be set by the probation department) State v. Dassau, 534 So.2d 467, 469 (La.App. 5 Cir. 1988) (same); State v. Absent, 578 So.2d 571, 573 (La.App. 3 Cir. 1991) (stating that the sentencing judge "may not legally delegate [the authority to impose conditions of probation] to the probation and parole office; and if he does, the sentence of probation is illegal."). An Oregon court reached the same conclusion in a case with facts similar to this case. See State v. Stephens, 614 P.2d 1180, 1182-84 (Or.Ct.App. 1980) (holding that a probation officer exceeded his authority by imposing a search condition because,

---

[2]In felony cases, "the home incarceration sentence is not available to the sentencing court . . . unless the probation division of the Department of Corrections recommends it." State v. Rome, 696 So.2d 976, 979 (La. 1997).

under the probation statute, only the court had the authority to do so).

## II.  **Good Faith Exception to the Exclusionary Rule**

The Government alternatively argues that the evidence is admissible based on the good faith exception to the exclusionary rule because of a good faith belief that probable cause existed and the contract thus justified the search and because of a good faith belief the search was consented to at the apartment.  See United States v. Williams, 622 F.2d 830 (5th Cir. 1980) (en banc). Although it appears the Government raised this issue in its motion to reconsider the magistrate's report, it did not appeal the issue to the district court.  Because the magistrate's report advised the Government of our forfeiture rule, we review the "good faith" issue only for plain error.  See Douglass v. United Services Auto. Assoc., 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

In Williams, we concluded that "evidence is not to be suppressed under the exclusionary rule where it is discovered by officers in the course of actions that are taken in good faith and in the reasonable, though mistaken, belief that they are authorized."  Williams, 622 F.2d at 840.  In this case, the officers did not have a subjective good faith belief that the contract authorized the search.  Officer Judice testified that he did not believe the contract allowed the search.  Further, the officers belief that the Defendant voluntarily consented to the

6

search was objectively unreasonable.  Officer Langley told the Defendant's girlfriend that the officers were going to search whether the Defendant consented or not.  The officers also knew that the Defendant would be sent to jail if he refused to allow the search.  Therefore, even if there were error in refusing to apply the good faith exception on the grounds now urged by the Government, it was not plain error.

## CONCLUSION

We affirm the district court's suppression of the evidence.

AFFIRMED.